SMITH–McCORD DRY GOODS CO. VS PERRY ET AL.

Opinion delivered January 6, 1900.

*1.   Attachment—Recision of Fraudulent Sale.*

Defendants made a sale of their property to an endorser on their note, who was father-in-law of a member of the failing firm, a few days after the recorded note was given to a creditor of the firm. This sale was afterward rescinded and a chattel mortgage covering stock of goods and building given to two creditors of the firm. Plaintiff thereupon attached the property on the ground of a fraudulent disposition of same. *Held*, that the first sale was fraudulent as to plaintiff one of the creditors and the attachment of plaintiff should have been sustained, regardless of the character of the mortgage to other interpleading creditors; it being necessary to determine that character in the branch of the proceeding.

Appeal from the United States court for the Northern District.

WILLIAM M. SPRINGER, Judge.

Attachment by the Smith-McCord Dry Goods Company against S. M. Perry and others. Judgment for defendants. Plaintiff appeals. Reversed.

The Smith-McCord Dry Goods Company, appellant, on January 1, 1895, brought suit in the United States court for the Indian Territory, First judicial division, at Muskogee, against S. M. Perry, J. H. Langley, Lafayette Langley, and E. C. Langley, co-partners in trade, doing business under the name of S. M. Perry, to recover $165.85 due for goods, wares, and merchandise sold and delivered by appellant to said firm. On said date appellant also sued out a writ of attachment against said firm upon the ground that defendants had sold, conveyed, or otherwise disposed of their property, or suffered or permitted it to be sold, with the fraudulent intent to cheat, hinder, and delay their creditors. On January 4, 1895, the writ was levied upon a storehouse and stock of boots and shoes in Adair, Ind. T., as the property of the firm of S. M. Perry, and defendants were summoned "to appear on the first day after the next May term of the United States court * * * at Muskogee, Ind. T., being the 7th day of May, A. D. 1895," etc. On May 9, 1895. Swofford Bros. and I. Stadden Grocery Company interpleaded, gave bond, and claimed the attached property by virtue of a certain chattel mortgage executed to them by defendants prior to the suing out of the attachment. On May 10, 1895, defendants having failed to answer, judgment by default was entered against them for $169.85. The issue on the attachment was tried to a jury Verdict for defendants. The case was regularly appealed to this court. The defendants (appellees here) were engaged in a general merchandise business at Adair, in the Indian Territory, and were indebted to plaintiff (appellant here,) for merchandise previously bought of them in the above-named sum. They were also largely indebted to other creditors, among

whom were the interpleaders, Swofford Bros. and I. Stadden Grocery Company, the indebtedness to these two firms amounting to about $2,500. The indebtedness to Swofford Bros. had been reduced to two notes,—one for $600, executed by the firm without security; and the other for $850, with one W. C. Brock as an indorser. Brock was the father-in-law of J. H. Langley, a member of the defendant firm. It appears from the proof that the note for $600 had been executed some time before the failure of the firm, and was two or three days past due; that Mr. Hanna, the agent of Swofford Bros., becoming suspicious of the solvency of the firm, demanded security for the amount not due, and thereupon the note for $850, with Brock as security, was executed. This note was made payable one day after date. Mr. Hanna was to return within a week or 10 days, and collect the notes. This was December 20th. Five days thereafter negotiations were entered into between the defendant firm and W. C. Brock, the security on the $850 note, for the sale to him of the entire stock of goods and the storehouse in which they were located. On the following day the sale was consummated, and possession given. The terms of the sale were that Brock was to pay for the goods at one-half of their invoice price, and the building, valued at $1,000, was sold on the same terms. The payments were to be made as follows: The $850 note of Swofford Bros., upon which Brock, the purchaser, was security, was to be paid to Mr. Hanna, in cash, and the balance to be paid to the defendants in 9 and 12 months, for which Brock executed to defendants his two promissory notes, due as above stated. This trade did not include the notes and accounts, which at that time were in the safe in the store building, and amounted to about $6,000. On December 28th, —two days after this sale,—Swofford Bros,' agent, Mr. Hanna, came to the store to collect his notes, and was informed by defendants of the condition of affairs. During the two days intervening between the sale and Mr. Hanna's

arrival, some of the goods had been sold by Brock, how much does not appear; nor is it shown that any of the proceeds of these sales was returned to the defendants, or paid to any other person. Mr. Hanna, on being informed of the situation, demanded that the $600 note, which was not provided for by the terms of the sale, should also be paid, and threatened that, if it were not paid, he would attach, and it was thereupon agreed between Mr Hanna and the parties to the sale that the contract of sale should be rescinded and annulled, and that defendants should execute a chattel mortgage upon the property to secure the payment of the Swofford Bros. notes and also the account of I. Stadden Grocery Company, whose agent happened to be present. This agreement was at once consummated by the excution of the mortgage and a delivery of all of the property, except the choses in action. Brock did not join in the instrument. The mortgage, besides conveying the property which had been sold to Brock, also included the choses in action of the firm. The language is as follows: "All * * * choses in action and chattel property now owned by said first party, and contained in and about the store building, or on grounds adjacent thereto, now and heretofore occupied by said first party, in Adair, in said last named First judicial division, or heretofore used by said first party in connection with their business conducted at said store or pertaining thereto; said personal property being all and the only personal property of the kind or nature mentioned now owned by said first party." The mortgage also provided that the mortgagee should take immediate possession of the property conveyed by it, and then further provided that: "Any custody or control which said first party or any former agent or employe of said first party may exercise over said mortgaged property during the existence of this mortgage shall be as the agent and representative of said second parties," etc.; otherwise, the instrument was in the usual form of a

chattel mortgage. The possession of the notes and accounts was not turned over to the mortgagee. It is not shown that any demand for them was ever made, but the mortgagor was allowed to collect them, and apply the proceeds to his own use. The house included in the mortgage, worth about $1,000, was bought in by Brock at the sale, under an agreement with Langley, one of the defendant firm, that, if it did not bring too much, he would take it off his (Brock's) hands at the price he should pay for it. It sold for $150, and Langley shortly afterwards, of money which he had collected on the notes and accounts, paid Brock that sum for it, and now holds it. He (Langley) also, out of the proceeds of the choses in action, paid a personal debt of his own of $200, and used a large-amount of his collections in the "hay business," in which transactions he lost about $500 of this money. A small amount was used in paying off firm debts, but nothing was paid on account of the indebtedness to the plaintiff. Upon these facts the plaintiff moved for a peremptory instruction to sustain the attachment, which was overruled, and exceptions saved.

*John B. Turner* and *James B. Burckhalter*, for appellant.

*William T. Hutchings* and *W. H. Kornegay*, for appellees.

CLAYTON, C. J. There is no question but that the first transaction—the sale of the firm property to Brock—was fraudulent. A scheme by which an indorser of a note of a failing firm for $850, given for goods recently purchased, is to be made whole by a purchase of all of the available assets of the firm, worth some four or five thousand dollars, by a payment of the note, with the balance deferred nine and twelve months, is fraudulent as to creditors. It is such a disposition of the property of the firm as is, in law and in fact, intended to cheat, hinder, and delay creditors; and this

is conceded by appellees. But it is contended that, the interpleaders, Swofford Bros. and I. Stadden Grocery Company, not being parties to this fraudulent transaction, their rights were not affected by it; and this is true. But this suit is solely upon the attachment branch of it, in which the interpleader cannot intermeddle. The interplea has not yet been tried. When that is heard, the rights of the interpleaders will be determined. The only question, as the case is now presented, is, were there sufficient grounds to sustain the attachment? And these grounds may be predicated on the sale made on December 26th, or on the fraudulent nature of the mortgage, executed two days thereafter. If either be fraudulent, the attachment should have been sustained. The sale had been consummated. The contract had been executed. A fraudulent disposition of the property had been made, and from that moment every creditor of the firm was given the right by law to attach, and no disposition of the property thereafter made could alter or abridge that right. If, after this fraudulent transfer had been made, other creditors than the attaching ones, in their race of diligence to secure the payment of their debts, fairly and honestly got possession of the property, or fixed liens upon it, they would have the right to establish their claims; not in the attachment suit, for they are not parties to that, but either by a separate action or as interpleaders. Under our Code of Practice, the attachment suit is first tried, and then the interplea. In the trial below, the theory seemed to be that the attachment could not be sustained unless the mortgage was fraudulent. But, while it is doubtlessly true that the attaching creditor will not be able to reap any fruits from this litigation if the mortgage ultimately should be held to be valid, yet the attachment can and ought to be sustained upon the fraudulent character of the sale, because in that suit the proof of it sustains the allegation of the complaint that the defendants had made a fraudulent disposition

*Attachment.*

of their property with the intent to cheat, hinder, and delay their creditors; and therefore the motion of the plaintiff for a peremptory instruction to the jury to find for the plaintiff, which was refused, should have been given.

We are asked to pass upon the question as to whether or not the mortgage, executed under the circumstances shown by the proof, was fraudulent; and, were it not for the fact that, independent of that transaction, we have found a fraudulent transfer upon which the attachment suit should be sustained, we would be compelled to pass upon that question. But, if we should find it to have been fraudulently executed, this would not relieve the court from again considering the same question on the trial of the interplea, because in that case the parties are different. In the case before us the interpleaders are not parties, and therefore have not been heard. The mortgage is valid on its face, and when the proof upon the issue raised by the interpleader shall be heard it may be quite different from that now presented. The interpleaders must be heard, and they must be heard in a suit to which they are parties. Their testimony was not even taken in this case, and they were not required to defend it; indeed, they would not have been permitted to do so. They have not yet had their day in court; hence, whatever might be our decision now, their rights would remain unadjudicated. We cannot see the necessity of now passing upon that branch of the case. Let the judgment of the court below be reversed, and the cause remanded.

THOMAS, TOWNSEND, and GILL, JJ., concur.